```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT

DIANE SALIGA,                   :
                                :
     Plaintiff,                 :
                                :
     v.                         :   CASE NO.  3:12cv832(RNC)
                                :
CHEMTURA CORPORATION,           :
                                :
     Defendant.                 :
```

RULING ON PLAINTIFF'S MOTION

The plaintiff brings this action against her former employer alleging discrimination based on her race, gender and religion. Pending before the court is the plaintiff's "motion to compel ESI discovery."[1] (Doc. #98.)

"The Federal Rules of Civil Procedure, case law, and the Sedona Principles all emphasize that electronically stored information ('ESI') should be a party-driven process." Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Sec., 255 F.R.D. 350, 358 (S.D.N.Y. 2008). Discussions about ESI should begin early in the case. Rule 26(f) requires that the parties meet and confer to develop a discovery plan that discusses "any issues about disclosure or discovery of [ESI], including the form or forms in which it should be produced." Fed. R. Civ. P. 26(f)(3)(C). "Of course, the best solution in the entire area of electronic discovery is cooperation among counsel." William A.

---

[1] On September 3, 2013, the plaintiff filed a motion to compel ESI discovery (doc. #89) to which defendant filed a memorandum in opposition (doc. #94). The plaintiff subsequently withdrew the motion. (Doc. #97.) This motion followed.

Gross Const. Associates, Inc. v. American Mfrs. Mut. Ins. Co., 256 F.R.D. 134, 136 (S.D.N.Y. 2009). "As the Sedona Conference recognized . . ., cooperation between counsel regarding the production of electronically stored information 'allows the parties to save money, maintain greater control over the dispersal of information, maintain goodwill with courts, and generally get to the litigation's merits at the earliest practicable time.' The Case for Cooperation, 10 Sedona Conf. J. 339, 339 (2009)." Trusz v. UBS Realty Investors LLC, No. 3:09CV268(JBA)(JGM), 2010 WL 3583064, at *4 (D. Conn. Sept. 7, 2010). "[C]ourts have emphasized the need for the parties to confer and reach agreements regarding the form of electronic document production before seeking to involve the court." Aguilar, 255 F.R.D. at 358.

The plaintiff's motion was only recently filed. However, for almost a year the parties have been unable to agree on how the defendant should search and produce its emails. During a status conference with the court on September 4, 2013, the court (Chatigny, J.) expressed dissatisfaction with the parties' lack of progress. (Doc. #105 at 15.) Notwithstanding, little more has happened to advance a compromise resolution on ESI and the parties remain at an impasse.[2] On this record, ordering the parties to

---

[2]The plaintiff's discovery requests seeking ESI were served more than a year ago. The defendant made repeated attempts to produce certain documents but the parties were unable to reach an agreement. The deadline for the completion of discovery is December 29, 2013.

2

meet and confer again would be futile.

Form of Production

The court first considers the form in which the emails will be produced. Under Fed. R. Civ. P. 34, a requesting party "may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C). The plaintiff requests that the emails be produced in native format, the form in which the document was created. "[E]lectronic information produced in the form in which the file was created (or 'native format') will contain application metadata[3] . . . . An electronic document or file produced in native format may also be accompanied by system metadata, such as the date the file was created or the identity of the computer on which it was created." The Sedona Conference Working Group on Electronic Document Production, The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document production, p. 62 (Sedona Conference Working Group Series 2007).

The defendant objects. The defendant does not argue that

---

[3]"Metadata, frequently referred to as data about data, is electronically-stored evidence that describes the history, tracking, or management of an electronic document. It includes the hidden text, formatting codes, formulae, and other information associated with an electronic document." Aquilar, 255 F.R.D. at 354 (internal quotation marks omitted). "Metadata for email will include the email address and/or names of the senders and recipients, the subject line, the date and time, and information regarding the email's Internet journey if it originated outside the organization." Anne Kershaw & Joe Howie, Judges' Guide to Cost-Effective E-Discovery at 2 (eDiscovery Institute 2010).

production in native format would be unduly burdensome or unreasonably expensive. Instead, it says that its standard practice is to produce ESI in searchable PDF or TIFF[4] and there is "no basis or need" to produce the emails in native format. (Doc. #109 at 8.) The defendant points out that documents produced in native format cannot be Bates stamped or marked confidential and that working with the documents (during deposition, motion practice and trial) in native format will be more difficult than other formats.

The defendant is correct that "TIFF is the most common choice." Effective Use of Courtroom Technology: A Judge's Guide to Pretrial and Trial 73 (Federal Judicial Center 2001). Here, however, the court is not persuaded by the defendant's objection. The rule says that the requesting party may specify the "form . . . in which [ESI] is to be produced," Fed. R. Civ. P. 34(b)(1)(C), and the defendant has not shown compelling reasons why it cannot produce the information in the format requested by the plaintiff. Accordingly, the court will grant the plaintiff's request for native format. See, e.g., In re Porsche Cars North America, Inc. Plastic Coolant Tubes Products Liability Litigation, 279 F.R.D. 447, 450 (S.D. Ohio 2012) (court granted plaintiffs' request for

---

[4] PDF and TIFF are static image formats that create a mirror image of the electronic document. The Sedona Conference Glossary: E-Discovery & Digital Information Management 35 (3rd ed. Sept 2010).

native format "absent a showing by [defendant] that such a production would be unduly burdensome); <u>Romero v. Allstate Ins. Co.</u>, 271 F.R.D. 96, 107 (E.D. Pa. 2010) ("the Court finds that Plaintiffs are entitled to have documents produced in native format with their associated metadata" where defendants do not allege that they will be financially burdened or prejudicially harmed by the production of metadata); <u>Camesi v. Univ. of Pittsburgh Med. Ctr.</u>, No. CIV.A.09-85J, 2010 WL 2104639, at *7 (W.D.Pa. May 24, 2010) (ordering defendants to produce ESI in its native format "absent a clear showing of substantial hardship and/or expense"); <u>In re Netbank, Inc. Secs. Litig.</u>, 259 F.R.D. 656, 681-82 (N.D. Ga. 2009) ("Although the Defendants have listed a number of hypothetical problems with providing documents in native format, they have not asserted these to be actual problems arising in the present case. . . . [T]he court is confident that the precision of record citations can be appropriately dealt with should [plaintiff] desire to use any of the documents at issue as exhibits or evidence. . . . The Defendants having given no good reason why they should not produce [plaintiff's] requested documents in native format, the Motion to Compel production of ESI information in native format is granted.").

<u>Production Requests 8 & 61</u>

The court next considers two particular ESI requests the plaintiff made in her First Request for Production of Documents.

5

In production request 8, the plaintiff seeks all emails from October 2010 to the present written by or received by fourteen individuals as well as "any other employee who was involved in the allegations contained in the Complaint, the supervision of Plaintiff's employment, in the drafting of any disciplinary warnings, drafting of performance reviews, drafting of performance improvement plans and letters of termination." The defendant objects to this request on numerous grounds, including that the request is overly broad, unduly burdensome and not reasonably limited in scope. The defendant argues that the request is not limited "to areas or topics relevant to this action." According to the defendant, its "initial search of e-mails to and from the 14 listed employees from October 1, 2010 to November 2012 resulted in 925,396 e-mails, not including attachments." (Doc. #99, Ex 5, Def's Response.) The defendant also objects that the request is duplicative of request 61 (discussed below). Without waiving its objections, the defendant produced electronic communications between the plaintiff, her co-workers, her supervisors, and members of the defendant's human resources department, including all emails referred to in the complaint.

In Request for Production 61, the plaintiff seeks "all electronic documents concerning the allegations in the complaint and the Plaintiff's employment" for the same time period. The request further states that

6

> [t]he following search terms shall be used but the request is not limited to such terms: Diane Saliga; Saliga; Jogita Khilnani; Jogita; Khilnani; Denise Mosher; Mosher; Ayesha Jagtiani; 'God Bless You'; 'Bless you'; Hindu; 'Chi rho'; Cross; Akhilesh Saxena; Mohsen Baccar; Anthony Longo; Caucasian; Christian; India Audit; Balance Sheet Review; Fraud Risk Assessment; Critical Spreadsheet testing; Sue Mullen; Christine Peterson; Allen Downes; Anuradha; Kirk Erstling; Assunta; Anuradha Arora; Jesus Candles; Fabiola Miranda.

The defendant objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant and admissible evidence.  The defendant also objects on the grounds that the phrase "search terms shall be used but the request is not limited to such terms" is ambiguous and vague.  Without waiving its objections, the defendant produced certain documents.

The parties thereafter attempted to negotiate search terms but were unable to reach a compromise.  (Doc. #99, Ex. 12.)  As a result, the parties present the court with competing proposals about how to search the defendant's email[5] communications.[6]  (Doc. #99, Ex. 12.)

The court first considers the issue of custodians.  The parties do not dispute the custodians whose email is to be

---

[5]This ruling is confined to email because the parties' submissions appear so limited.

[6]Production requests 8 and 61 are overly broad.  To the extent that the plaintiff moves to compel these particular requests as written either in this motion or in its earlier filed motion to compel (doc. #55 at 23-24), the motion is denied.

7

searched. In fact, the plaintiff's list of custodians is subsumed within the defendant's larger list.[7] In addition to the agreed upon list of custodians, the defendant has stated that it will produce the plaintiff's email file in its entirety. (Doc. #99, Ex. 12.)

The court turns to search terms. The court is loathe to decide the search terms to be used because the parties are far better positioned to do so. See William A. Gross Const. Associates, Inc. v. American Mfrs. Mut. Ins. Co., 256 F.R.D. 134, 135 (S.D.N.Y. 2009) (observing that the parties' inability to reach an agreement "left the Court in the uncomfortable position of having to craft a keyword search methodology"). "Ideally, the parties should agree on the search methods, including search terms or concepts . . . ." The Sedona Conference Working Group on Electronic Document Production, The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document production, p. 60 (2d ed. 2007). See also Sedona Conference Cooperation Proclamation: Resources for the Judiciary 22

---

[7] These custodians are:
1. Jogita Khilnani
2. Christine Peterson
3. Susan Mullen
4. Ayesha Jagtiani
5. Mohsen Baccar
6. Allen Downes
7. Denise Mosher
8. Anthony Longo
9. Assunta Chiaro
10. Kirk Erstling

(August 2011) (suggesting as a judicial management strategy to "[d]irect the parties to agree on a reasonable set of 'key words,' if key word searching is an appropriate methodology. Avoid having the court be forced to select key words for the parties, as the court is not in a position to determine whether any given set of key words will be effective in retrieving relevant information and filtering out irrelevant information.") But in view of the parties' inability to resolve this issue, the court must do so.

The plaintiff proposes 37 search terms, which consist of 12 words or phrases with the remainder comprising various versions of the custodians' names, <u>i.e.</u>, "Susan Mullen", "Sue", "Susan", "Mullen." The defendant's counter proposal consists of 11 of the 12 search terms in the plaintiff's list. The defendant does not agree to the term "India Audit."[8] The defendant also maintains that including the names of the custodians themselves is cumulative and unnecessary. Finally, the defendant contends that the 11 search terms should be searched within 50 words of "Diane" and "Saliga." After considering the parties' submissions and arguments, the court is persuaded that: (1) including the custodians' names as search terms is superfluous; (2) "India Audit" should be included as a search term and (3) the search terms need

---

[8]Although the defendant objects to the general search term "India Audit", it noted that because it was producing the plaintiff's emails in their entirety, that production would include any email that the plaintiff had regarding the India Audit. (Pl's Ex. 12.)

9

not be combined with terms "Diane" and "Saliga" as the addition of these terms unduly narrows the search.  Accordingly, the defendant shall conduct a keyword search of email of the identified custodians using the 12[9] search terms.[10]

Information regarding Data Collection

As a final matter, the court turns to the plaintiff's insistence that the defendant provide her with highly specific information regarding the defendant's "data collection process information, source information, custodian information [and] software information."  To that end, the plaintiff dispatched a letter to defendant in August 2013 containing three pages of technical questions about the defendant's system configuration, acquisition methods and data extraction.  (Doc. #99, Ex. 13.)  The plaintiff went so far as to instruct the defendant not to produce any ESI discovery until the plaintiff was satisfied that her

---

[9]The search terms are:
1. Bless You
2. Hindu
3. Chi Ro
4. Caucasian
5. Christian
6. Candles
7. Jesus
8. Discrimination (Discriminat!)
9. Harassment (Harass!)
10. Cross
11. God Bless you
12. India Audit

[10]The court refrains from determining a temporal scope of the emails to be searched as that issue is not briefed.

concerns and questions were resolved.

To the extent that the plaintiff seeks an order that the defendant respond to her queries in the August 2013 letter, the request is denied. If the plaintiff has legitimate concerns regarding the adequacy of the defendant's data collection procedures, counsel should discuss them. However, the plaintiff's questions may not impede the defendant's production, which must take place immediately. In the (hopefully unlikely) event that counsel are unable to resolve the plaintiff's concerns through cooperation, the plaintiff may propound specific discovery requests in accordance with the rules. D. Conn. L. Civ. 37(a). See, e.g., McNearney v. Washington Dept. of Corrections, No. C11-5930 RBL/KLS, 2012 WL 3155099, *6 (W.D. Wash. Aug. 2, 2012) (court granted a motion to compel response to interrogatory which asked for "the identity of persons who performed the ESI searches" and "the ESI storage locations that were searched").

Conclusion

For these reasons, the plaintiff's motion to compel ESI discovery (doc. #98) is granted in part and denied in part. The plaintiff and the defendant both request fees and costs. The requests are denied. See Fed. R. Civ. P. 37(a)(5)(C) (where a motion to compel is granted in part and denied in part, court has discretion to apportion fees). In this case, each party should bear its respective motion costs and fees. See MASTR Adjustable

Rate Mortgages Trust 2006-OA2 v. UBS, Real Estate Securities Inc., No. 12 Civ. 7322(HB)(JCF), 2013 WL 5437354, at *2 (S.D.N.Y. Sept. 27, 2013 ("when motion is granted in part and denied in part, award of expenses is discretionary"); Pegoraro v. Marrero, 281 F.R.D. 122, 134 (S.D.N.Y. 2012)(finding that "apportioning reasonable expenses in connection with making the motion is not warranted" under the circumstances); Safespan Platform Systems, Inc. v. EZ Access, Inc., No. 06CV726A, 2011 WL 7473467, at *5 (W.D.N.Y. Dec. 30, 2011("Given the mixed result of defendants' motion . . . this Court may apportion reasonable motion expenses under Rule 37(a)(5)(C) and finds that both sides should bear their own respective costs.")

SO ORDERED at Hartford, Connecticut this 25th day of November, 2013.

```
            /s/
    Donna F. Martinez
    United States Magistrate Judge
```